Daniell Newman (SBN CA 242834)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
newmandk@gtlaw.com

Rowena Santos (SBN CA 210185)
GREENBERG TRAURIG, LLP
18565 Jamboree Road, Suite 500
Irvine, California 92612
Telephone: 949.732.6500
Facsimile: 949.732.6501
santosro@gtlaw.com

Attorneys for Plaintiff INGENIO SANTA CLARA, S.A. DE C.V.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGENIO SANTA CLARA, S.A. DE C.V., a Mexican corporation,<br><br>        Plaintiff,<br><br>v.<br><br>AZUMEX CORP., a California corporation, FABIAN GOMEZ-IBARRA, an individual, and DOES 1 through 10, inclusive,<br><br>        Defendants. | CASE NO. '25CV1041 JO   DEB<br><br>**PLAINTIFF'S COMPLAINT FOR:**<br><br>(1) **BREACH OF CONTRACT;**<br>(2) **FRAUD IN THE INDUCEMENT; and**<br>(3) **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

1
COMPLAINT

## INTRODUCTION

1. Plaintiff Ingenio Santa Clara, S.A. de C.V. ("Plaintiff") brings this action to enforce its rights under a contract for the sale of refined sugar to Defendant Azumex Corp. ("Azumex"), which contract was solicited and then breached by Azumex and its owner, Defendant Fabian Gomez-Ibarra (Azumex and Mr. Gomez-Ibarra together are the "Defendants").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2), because there is complete diversity of the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District.

## THE PARTIES

4. Plaintiff Ingenio Santa Clara, S.A. de C.V. is a corporation organized and existing under the laws of Mexico, with its principal place of business located in the State of Michoacán in western Mexico.

5. Defendant Azumex, Corp. is a corporation organized and existing under the laws of the State of California, with its principal place of business located at 2320 Paseo De Las Americas, Suite 112, San Diego, CA 92154 (according to Azumex's latest Statement of Information filed with the Office of California's Secretary of State).

6. Defendant Mr. Gomez-Ibarra is domiciled in, and is a resident of, the State of California, with a business address located in the State of California c/o Defendant Azumex, and, upon information and belief, is the sole owner, Chief Executive Officer, Secretary, Chief Financial Officer and Director of Defendant Azumex.

7. Based on the records of the Office of the Secretary of State for the State of California, Defendant Fabian Gomez-Ibarra is listed in the Statement of Information as the "Chief Executive Officer, Secretary, Chief Financial Officer" of Azumex, Corp.

8. Based on the records of the Office of the Secretary of State for the State of California, Defendant Gomez-Ibarra is also the registered agent for Azumex in California, with an address in San Diego that is identical to the principal and mailing addresses listed for Azumex.

9. Plaintiff is informed and believes and based thereon alleges, that Mr. Gomez-Ibarra is the sole owner of Azumex.

10. Plaintiff is informed and believes and based thereon alleges, that Mr. Gomez-Ibarra is the sole manager of Azumex, acting alone as its Chief Executive Officer, Secretary, Chief Financial Officer and sole Director.

11. Plaintiff is informed and believes and based thereon alleges, that Mr. Gomez-Ibarra fully and completely controls all actions of Azumex, including but not limited to the finances, business policies and practices, and day-to-day activities of Azumex.

12. Plaintiff is informed and believes and based thereon alleges, that Azumex is a mere instrumentality and alter ego of Mr. Gomez-Ibarra.

13. Plaintiff is informed and believes and based thereon alleges, that Azumex is and was completely dominated and controlled by Fabian Gomez-Ibarra and is merely a shell entity fronting for Gomez-Ibarra.  Azumex has no independent officers, directors, or offices, fails to maintain corporate formalities and is undercapitalized, and to recognize Azumex as a separate and independent entity would sanction fraud; as such, Plaintiff is informed and believes and based thereon alleges, Azumex is a mere shell, instrumentality, and alter ego of Gomez-Ibarra, who is liable to Plaintiff for the actions and/or omissions described herein as the authorized or ratified agent, servant, employee, principal, partner, co-conspirator, co-venturer, alter ego, or other representative or accomplice of Azumex, and at all times was acting within the scope and authority of his duties. Moreover, all conduct by Azumex was done with the knowledge, authorization, consent, ratification, or at the direction of or in conspiracy with Mr. Gomez-Ibarra.

/ / /

/ / /

# FACTUAL ALLEGATIONS

14. Plaintiff is a producer and processor of refined sugar and has an annual quota / fixed allocation imposed by the Mexican government which limits the amount of sugar Plaintiff is permitted to sell for export to the United States each year. This quantity limitation is the product of suspension agreements that govern bilateral trade between the United States and Mexico.

15. In the summer of 2024, Defendant Mr. Gomez-Ibarra contacted Plaintiff and negotiated a contract whereby Azumex agreed to purchase from Plaintiff a substantial portion of Plaintiff's 2025 allocation of refined sugar for the US market. Specifically, Defendants committed that Azumex would purchase 3,000 metric tons of refined sugar from Plaintiff at the price of 46.84 cents ($0.4684 USD) per pound, with at least 50% of that amount (1,500 tons) to be purchased before March 31, 2025, and the remainder to be purchased by August 30, 2025. Defendants also committed to pay for each delivery within eight (8) days of receipt.

16. The agreement between Plaintiff and Defendants is reflected in a writing dated January 6, 2025, "Contract #060125-GPSCR," a true and correct copy of which is attached hereto as **Exhibit 1** (the "Agreement") and is incorporated by reference.

17. While shipments to Azumex were originally supposed to begin in early 2025, in late 2024 Mr. Gomez-Ibarra pleaded with Plaintiff for early delivery of sugar for a claimed emergent need. Plaintiff obliged and at Defendants' request started delivering sugar in December.

18. On December 13, 2025, Plaintiff delivered 120 tons of refined sugar to Azumex's warehouse facility in Tijuana, Mexico, and delivered another 60 more tons on December 17, 2025. Delivery was made pursuant to all contractual requirements. The sugar Plaintiff delivered to Defendants in December totaled 180 tons, and the agreed upon price for the shipments was $168,624 USD (or 360,000 lbs. at $0.4684 per pound).

19. Shortly after delivery, Mr. Gomez-Ibarra asked for an extension of time to pay for the 180 tons of sugar, which Plaintiff understood to be a request for perhaps a week or

two beyond the Agreement's 8-day payment deadline. Plaintiff generously granted this brief extension of time to pay. Payment never came.

20. When no payment was received over a month after delivery, on January 18, 2025, Plaintiff demanded immediate payment of the full balance. The demand was ignored. Thereafter, and throughout the months of February, March, and into this month of April, Plaintiff has repeatedly demanded payment from Defendants, often in writing, all to no avail. To date, Defendants have not paid a single dollar for the tons of sugar Azumex received and accepted.

21. Defendants have repeatedly acknowledged that the payment for the sugar has been due and owing to Plaintiff for months. Defendants have never disputed that the payment is long overdue. Defendants have repeatedly promised that "the check was in the mail" when it was not. On January 31, 2025, Mr. Gomez-Ibarra sent Gabriel Reynoso Castillo of Plaintiff a message in which he claimed that Azumex had just made two payments of $30,000 each. This was not true and no such payments were ever received.

22. Then, in late March of 2025, Mr. Gomez-Ibarra advised that Azumex would begin paying and would also pay interest on the amounts it owed. On March 28, 2025, Gomez-Ibarra sent Mr. Castillo an email committing to pay Plaintiff a total of $150,000 pursuant to a payment schedule. While this was less than the total obligation, and Plaintiff never agreed to accept less than the full balance due, Plaintiff eagerly awaited the promised payments. The Azumex proposed payment schedule was as follows: $20,000 USD on April 5, 2025, $20,000 USD on April 12, 2025, $20,000 USD on April 19, 2025, $20,000 USD on April 26, 2025, $25,000 USD on May 2, 2025, $25,000 USD on May 9, 2025, and, $25,000 USD on May 16, 2025. Azumex then failed to make even a single one of those payments. Once again, Defendants had lied. A true and correct copy of Mr. Gomez-Ibarra's email is attached hereto as **Exhibit 2**.

23. Having tried for months to get Defendants to pay Plaintiff what they owed and continue to owe, Plaintiff has no recourse but to institute this action to vindicate its rights under the Agreement.

## FIRST CLAIM FOR RELIEF
## (BREACH OF CONTRACT)

24. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 23 of this Complaint as if fully set forth herein.

25. The Agreement is an enforceable written contract by and between Plaintiff and Azumex.

26. Plaintiff has performed all obligations required of it by the Agreement, except as such performance has been prevented, waived, or excused by Defendants' acts of misconduct and breach.

27. There are no conditions precedent or independent events that have not yet been satisfied in such a manner as to excuse Defendants' contractual duties to Plaintiff.

28. Defendants breached the Agreement by failing to pay, timely, the monies owed to Plaintiff under the Agreement.

29. As a direct and proximate result of Defendants' breaches of the Agreement, Plaintiff has been damaged in an amount to be determined.

## SECOND CLAIM FOR RELIEF
## (FRAUD IN THE INDUCEMENT)

30. Plaintiff incorporates by reference the allegations of paragraphs 1 through 29, as though fully set forth herein.

31. Prior to entering into the Agreement, Defendant Garcia-Ibarra represented to Plaintiff that (a) Azumex had an immediate need for refined sugar, (b) that he was certain Azumex would purchase the full amount of the sugar for which Azumex contracted, namely 3,000 metric tons, and that (c) payment would be promptly made the week after each delivery.

32. These representations were false. It is readily apparent from the fact that within days of receipt of the very first shipment Azumex was seeking to delay payment and from the fact that now, over four months post-delivery, not a single dollar has been paid by Defendants, that Defendants never had any intention of paying for the sugar they received.

33. When Defendants made the representations to Plaintiff, they knew them to be false. Defendants surely knew they did not have the money to pay for the shipments at the time they requested them as the payments were due the next week.

34. Defendants made the representations with the intention to deceive and defraud Plaintiff and to induce Plaintiff to act in reliance on the representations by sending the sugar to Plaintiff. Plaintiff then did in fact act in reliance.

35. Had Plaintiff known the truth, it would not have delivered the sugar to Defendants. Plaintiff was adversely affected by and suffered harm due to the representations.

36. As a direct and proximate result of defendants' false representations, Plaintiff has suffered and will continue to suffer damages in an amount to be determined.

37. Defendants' misconduct was intentional and malicious and constitutes oppression, fraud, or malice. Defendants acted intentionally, oppressively, fraudulently, knowingly, and willfully with the intent to interfere with and deprive Plaintiff of its rights in and to the Property and placing in jeopardy Plaintiff's allocation of refined sugar from the Mexican authorities, justifying an award of exemplary and punitive damages.

### THIRD CLAIM FOR RELIEF

**(BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)**

38. Plaintiff incorporates by reference the allegations of paragraphs 1 through 37, as though fully set forth herein.

39. Plaintiff and Defendants entered into the Agreement and Plaintiff then did all or substantially all the significant things the Agreement require, including timely delivery of the refined sugar and the accompanying paperwork to Defendants. All of the conditions required for Defendants' performance under the Agreement occurred. Notwithstanding the foregoing, Defendants' acts and/or omissions, including the failure to pay Plaintiff the monies owed under the Agreements, prevented Plaintiff from receiving the benefits to which it was entitled under the Agreements. By doing so, Defendants did not act fairly or in good faith. Defendants' conduct directly and proximately caused harm to Plaintiff.

40. Defendants acted maliciously, unfairly and in bad faith in their conduct relating to the Plaintiff by fraudulently and maliciously representing that Defendants could and would timely pay Plaintiff and then by failing to pay the monies due to Plaintiff.

41. Defendants' unfair conduct committed in bad faith, which also constitutes conduct committed with malice, oppression, and/or fraud, has proximately caused Plaintiff significant damages, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. For compensatory damages, in an amount to be proven at trial;

B. For consequential damages, in an amount to be proven at trial;

C. For general damages, in an amount to be proven at trial;

D. For special damages, in an amount to be proven at trial;

E. For punitive and exemplary damages, in an amount to be proven at trial;

F. For pre-judgment and post-judgment interest as allowed by law;

G. For attorneys' fees and costs of suit herein incurred; and,

H. For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims.

DATED: April 24, 2025                    GREENBERG TRAURIG, LLP

By_____
Daniell K. Newman
Attorneys for Plaintiff
INGENIO SANTA CLARA, S.A. DE C.V.